IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON PARKER,

    Plaintiff

v.                                                             Civ. No. 17-372 WJ/GBW

BAKER HUGHES INCORPORATED
LONG TERM DISABILITY PLAN, *et al.*,

    Defendants.

## **ORDER GRANTING IN PART MOTION TO COMPEL**

This matter comes before the Court on Plaintiff's Motion for Discovery and the accompanying briefing. *Docs. 32, 34, 37*. In his Motion, Plaintiff seeks to compel discovery regarding Defendant Metropolitan Life Insurance Company's ("MetLife") dual role conflict of interest in order to determine "the seriousness of the inherent conflict and the likelihood that it jeopardized MetLife's decisionmaking process" in denying Plaintiff's ERISA claim. *Doc. 32* at 2 (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010)).

On March 22, 2018, counsel for Plaintiff emailed Plaintiff's first interrogatories to MetLife. *Doc. 32-1*, Exs. A, B. On April 3, 2018, counsel for MetLife emailed Plaintiff's counsel in order to convey its preliminary position regarding the proposed discovery requests. *Doc. 32-1*, Ex. C. In response, Plaintiff filed his Motion to Compel on April 10,

2018, although he had not yet formally received any of MetLife's discovery responses.[1]

*Doc. 32*. On April 23, 2018, MetLife served its official responses to Plaintiff's interrogatories. *Doc. 34-1*. Plaintiff filed a Notice of Briefing Complete on May 16, 2018. *Doc. 38*.

I. **LEGAL STANDARD**

As noted above, the discovery disputes at hand relate to Plaintiff's theory of the case that MetLife's dual role conflict of interest influenced its decision to deny Plaintiff's ERISA claim for long-term disability benefits. *See generally doc. 32*. A dual role conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). "In an ERISA case where . . . the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the administrator's decision for an abuse of discretion." *Murphy*, 619 F.3d at 1157 (internal quotations and citations omitted). This standard of review applies "even when a conflict of interest potentially affects the benefits decision." *Benson v. Hartford Life & Accident Ins. Co.*, No. 2:10-CV-275-TS, 2011 WL 285831, at *2 (D. Utah Jan. 28, 2011) (citing *Glenn*, 554 U.S. at 111). Under this standard, courts generally may not consider

---

[1] As a result of Plaintiff's anticipatory filing, certain disputes raised in the Motion for Discovery have been partially resolved. Namely, as to several of Plaintiff's requests at issue in the Motion, MetLife did ultimately provide responses relating to some—but not all—years within the time periods requested by Plaintiff.

2

materials outside the administrative record. *Murphy*, 619 F.3d at 1162 (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992)).

However, the Tenth Circuit recognizes a narrow exception to the extra-record discovery prohibition, in which discovery of documents related to an administrator's dual role conflict of interest "may, at times, be appropriate[.]" *Id*. Nevertheless, this exception does not function as a green light to discovery whenever such conflicts appear; rather, "discovery related to a conflict of interest may often prove inappropriate." *Id.* at 1162-63.

To determine the appropriateness of requested discovery relating to a dual role conflict of interest, the Court must consider the requested discovery pursuant to the familiar standards of Fed. R. Civ. P. 26(b). *Id.* at 1163. Under Fed. R. Civ. P. 26(b)(1), the scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Tenth Circuit explained the application of Rule 26(b) in ERISA discovery in *Murphy*:

> First, while . . . ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims. . . . And while discovery may, at times, be necessary to allow a claimant to ascertain and argue the seriousness of an administrator's conflict, Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition. The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety. Second, in determining whether a discovery request is overly costly or burdensome in light of its benefits, the district court will need to consider

3

> the necessity of discovery. For example, the benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious . . . . Similarly, a district court may be able to evaluate the effect of a conflict of interest on an administrator by examining the thoroughness of the administrator's review, which can be evaluated based on the administrative record. . . . [A] district court may allocate significant weight to a conflict of interest where the record reveals a lack of thoroughness.

*Murphy*, 619 F.3d at 1163 (internal quotations and citations omitted).

Under Federal Rule of Civil Procedure 37(a), a party is permitted to file a motion to compel responses to properly propounded discovery. *See* Fed. R. Civ. P. 37(a). A court may limit discovery if a request is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

II. **ANALYSIS**

Plaintiff's statement that extra-record discovery is not entirely precluded, due to the dual role conflict exception, does not suffice to meet his burden to show that he is entitled to discovery here. *Doc. 32* at 2. *See Murphy*, 619 F.3d at 1163 ("The party moving to . . . . engage in extra-record discovery bears the burden of showing its propriety."). In other words, as previously stated, the dual role conflict exception does not function as a green light to discovery whenever such conflicts exist; Plaintiff must

4

also show that each request, individually, is appropriate under the standards set forth in Rule 26(b). Thus, MetLife's concession to the existence of its financial conflicts of interest does not end the inquiry, and it remains for the Court to determine the appropriateness of Plaintiff's requests pursuant to Rule 26(b). The Court considers each disputed Interrogatory or Request for Production, in turn.

**Interrogatory Nos. 2 and 3**

Interrogatory Nos. 2 and 3, in conjunction, seek to compel MetLife to "state the name, address, position, job title, and affiliation to MetLife of . . . any [] health or vocational professional who rendered a report or opinion to MetLife, examined records for MetLife, or examined the Plaintiff for MetLife at any time. . . . [and] state how that person was compensated and the exact amount of the compensation" related to Plaintiff's disability claims and appeals. *Doc. 34-1* at 2-3. In response to these interrogatories, MetLife stated that Dr. Taylor rendered reports on July 22, 2016 and September 26, 2016, and was compensated $1,207.50 and $345.00, respectively. *Id*. at 3. MetLife also responded that it would produce a copy of the relevant consulting agreement with Dr. Taylor, subject to the entry of a protective order. However, as noted in Plaintiff's Reply, Interrogatory Nos. 2 and 3 are not limited to Dr. Taylor. *Doc. 37* at 3. In fact, Plaintiff identifies at least two other individuals who contributed to opinions on which MetLife relied: Jacklyn Stachnik and Nancy Brasefield. *Id*.

So, the dispute boils down to whether MetLife should be required to respond to Interrogatory Nos. 2 and 3 as they pertain to professionals besides Dr. Taylor. MetLife opposes such a requirement because it alleges that, beyond responsive materials related to Dr. Taylor, the requested information is not proportional to the needs of the case.[2] *See doc. 34* at 5-7. This argument is unpersuasive. While Dr. Taylor may be the most significant health professional relied upon by MetLife in Plaintiff's case, he is not the only one. There is no reason to conclude that a conflict of interest could not be revealed in MetLife's interaction with other professionals involved in Plaintiff's case. *See Almeida v. Hartford Life Ins. Co.*, No. 09-CV-1556-ZLW-KLM, 2010 WL 743520, at *3 (D. Colo. Mar. 2, 2010) (holding that "the extent of any alleged conflict of interest could be shown by how Defendant instructs third party consultants, doctors and reviewers and/or whether Defendant provides incentives to them."). As for proportionality, given MetLife's assertion that each involved professional is identified in the administrative record, it will not be burdensome to collect the information sought in Interrogatory Nos. 2 and 3.

MetLife next opposes compulsion of this disclosure, stating that such information is readily available to Plaintiff through review of the administrative record. This argument is also unpersuasive. First, information regarding compensation of the

---

[2] It is unclear whether MetLife actually opposes this disclosure. In fact, it asserts that it "indicated [to Plaintiff] that it was not yet in a position to state its final position, but stated that it might provide some response." *Doc. 34* at 6. Given the Court-imposed deadline for Plaintiff to file his motion, the Court will presume opposition for the purposes of this order.

6

relevant individuals is not readily available to Plaintiff in the administrative record. Second, even if it were, an answer to an interrogatory should be complete in itself and should not refer to pleadings, depositions or other documents. *See, e.g., Lawman v. City & Cty. of S.F.*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016); *Autoridad de Carreteras y Transportacion v. Transcore Atlantic, Inc.*, 319 F.R.D. 422, 431 (D.P.R. 2016). *See also* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). This approach ensures that the requesting party is aware of the responding party's precise answer.

As a result, Plaintiff's Motion, as it relates to Interrogatories 2 and 3, is GRANTED.

**Interrogatory No. 7**

Interrogatory No. 7 requests that MetLife state the total number of times that MetLife requested a medical opinion from Dr. Taylor from 2013 through 2016. *Doc. 34-1* at 6. MetLife objected that this request is overbroad to the extent that it seeks information prior to 2015. Consequently, it provided such information for 2015 and 2016 and objected to the remainder. *Id.*

Generally, Plaintiff argues that this Interrogatory, as well as Interrogatory Nos. 8, 9, 10, 11, 12 and 14, is relevant to show "MetLife's relationship with Dr. Taylor…." *Doc. 32* at 4. Specific to Interrogatory No. 7, Plaintiff contends that it "is relevant to how long-standing and extensive MetLife's relationship with Dr. Taylor has been …." *Id.*

7

The Court agrees that the depth of the relationship between MetLife and Dr. Taylor is relevant to the conflict of interest inquiry. However, the precise number of requests for opinions years preceding the opinion in Plaintiff's case is not particularly probative on that matter. MetLife has already provided the statistics for 2015 and 2016 which is sufficient to establish that, at the time of the review of Plaintiff's case, Dr. Taylor was a medical doctor consistently used by MetLife. With this information, as well as the information which will be compelled in response to Interrogatory No. 10, Plaintiff will have the discovery proportional to the conflict of interest inquiry with respect to Dr. Taylor.

Because requiring MetLife to compile statistics regarding requests for opinions from Dr. Taylor prior to 2015 is not proportional to the needs of this case, the Court DENIES Plaintiff's Motion as to Interrogatory No. 7.

**Interrogatory No. 8**

Interrogatory No. 8 requests that MetLife state the number of times that MetLife fully or partially denied any claim for benefits or appeals after obtaining an opinion from Dr. Taylor from 2013 through 2016. *Doc. 34-1* at 6. MetLife objected that the interrogatory is overly broad regarding the relevant time period and its focus on information related to third-party claims, is unduly burdensome, seeks information unrelated to MetLife's dual role conflict of interest, is not proportional to the needs of the case, is not reasonably calculated to lead to the discovery of admissible evidence,

and is misleading. *Id.* at 6-7.

Ultimately, the Court finds that the burden MetLife would experience as a result of producing the requested discovery would outweigh any potential benefit that Plaintiff might reap. In *Rickaby*, the District Court of Colorado refused to compel responses to similar interrogatories, which sought statistics regarding the number of times a particular third party's opinions resulted in favorable or unfavorable decisions by the insurer, because

> [t]he determination of whether to award or deny disability benefits is necessarily fact-intensive. The court is therefore not convinced that discovery of claims that [the insurer] has denied or awarded with supporting evidence from [third party] would be probative of any bias or lack thereof. Indeed, without discovery into the underlying bases for these coverage decisions, a simple tally of the number of grants and denials would lack meaning, particularly where there is no information regarding whether the denials were wrongly decided. The court also finds that the burden that the requested discovery would place on [the insurer] outweighs the value of this information to [the plaintiff].

*Rickaby v. Hartford Life & Accident Ins. Co.*, No. 15-CV-813-WYD-NYW, 2016 WL 1597589, at *3-*4 (D. Colo. Apr. 21, 2016) (internal citations omitted).

The Tenth Circuit's decision in *Murphy* further supports this conclusion. There, faced with a similar discovery request for "extensive evidence of how the administrator and independent physicians had resolved other [ERISA claims]" in a case involving an alleged dual role conflict of interest, the Tenth Circuit expressed "concern that this discovery could create a morass of secondary and remote arguments going to which other cases are comparable and relevant to showing prejudice or bias in this case[,]" and

recognized that the "utility of such expansive discovery is likely in all but the most unusual cases to be outweighed by the burdensomeness and costs involved." *Murphy*, 619 F.3d at 1164 n.9.

For the same reasons, the Court concludes that MetLife would have to engage in extremely expensive and burdensome research in order to provide responses that would have minimally probative value, thus placing the requested discovery outside the permissible scope of Rule 26.[3] Allowing such discovery would also be contrary to the intent of ERISA procedure to dispose of cases in a timely and cost-efficient manner. *See Murphy*, 619 F.3d at 1159 ("Congress designed ERISA to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.") (internal quotations and citations omitted). In consideration of the foregoing, the Court DENIES Plaintiff's Motion to Compel as to Interrogatory No. 8.

**Interrogatory No. 9**

Interrogatory No. 9 requests that MetLife state the total value of the claims for benefits appeals that MetLife fully or partially denied after obtaining an opinion from Dr. Taylor from 2013 through 2016. MetLife objects to this interrogatory on the same grounds as those asserted in response to Interrogatory No. 8. Similarly, the Court

---

[3] MetLife explains,
> In order to respond to these interrogatories, MetLife would need to identify all claim files in which Dr. Taylor provided independent peer review reports. After identifying the files, MetLife then would need to review each of those independent peer review reports as well as other file materials in order to put the reports in context. MetLife does not have the staff to devote to such a project, and would need to hire temporary workers...

*Doc. 34* at 10.

incorporates its analysis of Interrogatory No. 8 and applies it equally to Interrogatory No. 9, finding that the burden on MetLife to collect data on the total value of all claims denied from 2013 until 2016, after obtaining an opinion from Dr. Taylor, heavily outweighs any possible benefit that Plaintiff might enjoy from such information. MetLife explains that, in order to respond to this interrogatory, MetLife would need to identify all claim files in which Dr. Taylor provided reports from 2013 through 2016, and review each report and other file materials, necessitating the hiring of temporary workers. *Doc. 34-1* at 9. In comparison, without more, knowing the mere value of denied claims provides little insight into MetLife's decision-making process and potential for bias. As a result, the Court DENIES Plaintiff's Motion to Compel as to Interrogatory No. 9.

**Interrogatory No. 10**

Interrogatory No. 10 requests that MetLife state the total amount of money that MetLife paid to Dr. Taylor from 2013 through 2016. *Doc. 34-1 at 11.* MetLife objected that this interrogatory is overly broad to the extent that it seeks information prior to 2015. Consequently, it provided such information for 2015 and 2016 and objected to the remainder. *Id.*

As noted above, the Court agrees that the depth of the relationship between MetLife and Dr. Taylor is relevant to the conflict of interest inquiry. Moreover, unlike the requests in Interrogatory Nos. 7, 8, and 9, the amount of money paid to Dr. Taylor is

11

quite probative on the issue of conflict of interest. Moreover, the Court is unconvinced that collecting such data would be such a burden as to make its disclosure out of proportion with its relevance. Therefore, the Court GRANTS Plaintiff's Motion as to Interrogatory No. 10.

**Interrogatory No. 11**

Interrogatory No. 11 requests that MetLife state the total number of long term disability claims that MetLife decided from 2013 through 2016. *Doc. 34-1* at 11. MetLife objects that the interrogatory is overly broad, seeks information unrelated to MetLife's dual conflict of interest, is not proportional to the needs of the case, and is not reasonably calculated to lead to the discovery of admissible evidence. *Id.* The Court agrees with MetLife's assertion that "[t]he information sought in this interrogatory would be meaningless without admitting the specific details of each case in order to be able to assess whether the determination of any of the third party claims has any conceivable relevance to the particular issues of [Plaintiff's] claim." *Id*. at 12. *See Murphy*, 619 F.3d at 1164 n.9. Further, requiring MetLife to amass this information would impose a substantial burden that outweighs any benefit that Plaintiff might receive as a result of its production. Consequently, such discovery would not be proportional to its value and the Court DENIES Plaintiff's Motion as to Interrogatory No. 11.

**Interrogatory No. 12**

Interrogatory No. 12 requests that MetLife describe the material terms of all contracts or agreements that MetLife entered into with Dr. Taylor from 2013 through 2016. *Doc. 34-1* at 12. MetLife objected that the interrogatory's request for information spanning from 2013 through 2016 is overbroad and not proportional to the needs of the case, since the reports provided by Dr. Taylor in this case are dated July 22, 2016 and September 26, 2016. *Id*. at 13. Nevertheless, MetLife noted that it would produce a copy of its contract with Dr. Taylor in effect in 2016 subject to the entry of a protective order in the case. *Id*.

As noted above, the Court agrees that the depth of the relationship between MetLife and Dr. Taylor is relevant to the conflict of interest inquiry. Moreover, unlike the requests in Interrogatory Nos. 7, 8, and 9, the contractual relationship between MetLife and Dr. Taylor during the years just preceding his evaluation of Plaintiff is quite probative on the issue of conflict of interest. Moreover, the Court is unconvinced that collecting such documents would be such a burden as to make its disclosure disproportionate to its relevance. Therefore, the Court GRANTS Plaintiff's Motion as to Interrogatory No. 12, subject to a protective order agreed upon by the parties.[4]

**Interrogatory No. 14**

Interrogatory No. 14 requests that MetLife state "the earliest date on which MetLife

---

[4] Should the parties not be able to agree to such an order within the next 10 days, MetLife is ordered to file a motion seeking a protective order no later than **June 25, 2018**.

requested a medical evaluation or opinion from [Dr. Taylor.]" *Doc. 34-1* at 13. MetLife objected that the interrogatory is overly broad, seeks information that is not discoverable under *Murphy*, is not proportional to the needs of the case, is not reasonably calculated to lead to the discovery of admissible evidence, and is misleading. *Id.* at 13-14. Plaintiff argues that the information is "relevant to the duration of and extent of MetLife's relationship with Dr. Taylor and the long-standing nature of their mutual, financial interests." *Doc. 32* at 6.

The Court agrees that the information Plaintiff seeks is narrowly tailored and reasonably calculated to the discovery of admissible evidence related to MetLife's conflict of interest. Further, the Court finds that requesting MetLife to provide the date on which the relationship between MetLife and Dr. Taylor began is not unduly burdensome or overbroad. *See Benson*, 2011 WL 285831, at *9 (explaining that non-case-specific information regarding an insurer's relationship with its reviewing physicians may be appropriately discoverable). Finally, even though independent medical consultants, such as Dr. Taylor, do not provide opinions regarding whether a claimant meets a definition of disability for long-term disability ("LTD") benefits, and MetLife is solely responsible for this determination, information related to the relationship between MetLife and Dr. Taylor may nevertheless be relevant to Plaintiff's theory of the case regarding MetLife's conflict of interest. As a result, the Court GRANTS Plaintiff's Motion as to Interrogatory No. 14.

14

**Interrogatory No. 15**

Interrogatory No. 15 requests that MetLife "[p]roduce all discovery response[s] that [are] related to [Dr. Taylor], which MetLife provided in connection with *Rowles v. Metropolitan Life Insurance Company, et. seq.*, 2012 WL 6590577, No. 2:11-cv-5158-CBM (C.D. Cal. December 17, 2012). Please redact information particular to the plaintiff in that case." *Doc. 34-1* at 15. MetLife objected that the interrogatory is overly broad in that it seeks information relating to third-party claims not properly discoverable under *Murphy*, is not proportional to the needs of the case, is not reasonably calculated to lead to the discovery of admissible evidence, and is misleading. *Id.* at 15-16. The Court agrees that the interrogatory's request for information about Dr. Taylor's review of a factually distinct third-party claim, years ago, is impermissibly broad, and the information sought in this interrogatory would be meaningless and irrelevant without admitting the specific details of the case. Consequently, such discovery would not be proportional to its value and the Court DENIES Plaintiff's Motion as to Interrogatory No. 15.

**Interrogatory No. 16**

Interrogatory No. 16 seeks the "amount of MetLife's insurance reserves that are allocated to paying long term disability claims and long term disability appeals." *Doc. 34-1* at 16. MetLife objected that the interrogatory falls outside the scope of permissible discovery. *Doc. 34* at 13. Specifically, it objected that the interrogatory is overly broad

15

in that it seeks information not limited by party or time, is not proportional to the needs of the case, and is not reasonably calculated to lead to the discovery of admissible evidence. *Doc. 34-1* at 16. It additionally noted that Plaintiff's contention that such discovery "is relevant to showing whether paying benefits . . . might have put MetLife in financial jeopardy" is supported by no more than bare assertions, and is doubtful, since the monthly LTD at issue is $3,123.47. *Doc. 34* at 14 (quoting *doc. 32* at 7).

The Court agrees that requiring discovery into MetLife's insurance reserves would not be proportional to the needs of this case and would be inappropriate here. The Supreme Court has held that dual role capacity conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances[.]" *Glenn*, 554 U.S. at 117. MetLife explained in its response to this interrogatory that it has taken various steps to "wall off" claims administrators from the finance department:

> [MetLife's] claims and appeals personnel do not have access to reserve information for any particular claim. . . . MetLife reviews each claim for group disability benefits on its own merits. Every claim determination is based solely upon the information in the individual claimant's claim file. In order to ensure the integrity of its claims processing, MetLife's finances are kept completely separate from claims. MetLife's group disability finance offices are geographically separate from its claims offices. Claims specialists and appeals specialists do not report up to Finance Department employees. Finance Department employees do not make, direct, or have any association with claims decisions. Claims specialists and appeals specialists do not have access to claim reserve information. Claims specialists and appeal specialists receive no compensation, awards,

bonuses, other financial benefits or performance recognition based upon either the value or the number of the claims they deny or terminate. Claims determinations are expected to be accurate regardless of the outcome of the determination. MetLife administers all claims consistently, regardless of whether the plan under which the claim arises is self-funded or fully insured.

*Doc. 34-1* at 17.

In light of the fact that MetLife walls off claims administrators from financial information, the Court finds that the burden of mandating discovery regarding MetLife's reserve funds outweighs any potential benefit that might be enjoyed by Plaintiff, and this discovery is not relevant to Plaintiff's dual conflict of interest theory. Therefore, the Court DENIES Plaintiff's Motion as to Interrogatory No. 16.

**Request for Production Nos. 2 and 3**

Request for Production Nos. 2 and 3 request that MetLife "[p]roduce all documents exchanged" between MetLife and Baker Hughes, Incorporated, as well as "all documents exchanged" between MetLife and Defendant Baker Hughes Incorporated Long Term Disability Plan,[5] "regarding the purchase of a long term disability policy or plan, underwriting of the policy or plan, and premium payments." *Doc. 34-1* at 27, 28. MetLife objected to these requests on the basis that they seek information unrelated to MetLife's dual role conflict of interest, are not proportional to the needs of the case, and are not reasonably calculated to lead to the discovery of

---

[5] Baker Hughes, Incorporated is no longer a named Defendant in this case. *See docs. 10, 11*. The properly named party is Defendant Baker Hughes Incorporated Long Term Disability Plan. As such, these Requests for Production are duplicative and are accordingly treated herein as a single discovery request.

17

admissible evidence. *Id.* Similarly, in its Response, MetLife argues that Plaintiff's "contention bears no relation to the considerations relevant to *Glenn* dual role capacity conflict." *Doc. 34* at 15. MetLife explains that the fact that Baker Hughes purchased a group LTD policy from MetLife to fund the Plan's LTD benefits does not indicate the existence of a conflict, especially considering that MetLife's claims and appeals personnel do not have any access to this information, as discussed above. *Id.* To reiterate, MetLife emphasized that the underwriting of the group LTD policy and Baker Hughes's payment of premiums for that group LTD policy could not have influenced those responsible for rendering the determination of Plaintiff's eligibility for LTD benefits, because MetLife has taken a series of steps to ensure that the finance department, which handles the materials at issue, and the claims and appeals specialists—i.e., those who handled Plaintiff's case and denied his claims—do not interact. *Id.*

In his Reply, Plaintiff cites to a District Court of Kansas case to support the principle that Plaintiff should be able to discover materials related to underwriting and premium payments here. *Doc. 37* at 6 (citing to *Rutherford v. Reliance Standard Life Ins. Co.*, No. 10-2456-JWL, 2011 WL 4376557, at *4 (D. Kan. Sept. 20, 2011)). However, Plaintiff's reliance on *Rutherford* is misplaced. In *Rutherford*, the court permitted the plaintiff to discover information related to underwriting policies and guidelines, because the insurer's letter denying coverage to the plaintiff referred to the

18

underwriting policies as the basis for the decision. The court concluded that "[a]ny policies or guidelines on which [the insurer] relied to make its decision must be . . . disclosed to plaintiff." 2011 WL 4376557, at *4. Here, MetLife has made clear that the claims and appeals specialists did not rely on the materials that Plaintiff seeks in order to render a decision. Rather, the department that handled these materials and the department that rendered a decision in Plaintiff's case are entirely separate. As a result, the Court DENIES Plaintiff's Motion as to Request for Production Nos. 2 and 3.

   III.   CONCLUSION

In consideration of the foregoing, the Court GRANTS Plaintiff's Motion in part, thereby compelling MetLife to respond to Interrogatory Nos. 2, 3, 10, 12 and 14. All other requests asserted by Plaintiff in the Motion are hereby DENIED.

   **IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE